UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GOLD'S GYM LICENSING, LLC,<br>a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>K-PRO MARKETING GROUP, INC.,<br>a Minnesota Corporation,<br><br>Defendant. | Case No. 09-CV-1211 (PJS/RLE)<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR PRELIMINARY<br>INJUNCTION |

Dean C. Eyler and Stephen J. Vaughan, GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A., for plaintiff.

Plaintiff Gold's Gym Licensing, LLC ("Gold's") is in the business of franchising health and fitness centers that operate under the "Gold's Gym" name. Gold's brings claims of trademark infringement, unfair competition, deceptive trade practices, and unlawful trade practices against defendant K-PRO Marketing Group, Inc. ("K-PRO"). This matter is before the Court on plaintiff's unopposed motion for a preliminary injunction. For the reasons stated below, the motion is granted.

*A. Standard of Review*

A court must consider four factors in deciding whether to grant a preliminary injunction: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on the party that is enjoined; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Preliminary injunctions are extraordinary remedies, and the

party seeking such relief bears the burden of establishing the *Dataphase* factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

## B. Likelihood of Success

To prevail on its trademark-infringement claims, Gold's must establish that it has a valid, protectable mark and that there is a likelihood of confusion between its mark and the mark used by K-PRO. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009).

It is undisputed that Gold's has numerous registered marks associated with its health and fitness centers. *See* Albright Cert. ¶ 10. Federally registered marks are entitled to a presumption of validity. *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994). It is also undisputed that Gold's has used its marks continuously and extensively throughout the United States for many years, reinforcing the presumption of validity. *See* Albright Cert. ¶ 17. As K-PRO has not offered any evidence to rebut this presumption, Gold's is likely to succeed in establishing that it has valid, protectable marks.

There is similarly no dispute that K-PRO is using marks both identical and nearly identical to those owned and registered by Gold's. *See* Albright Cert. ¶¶ 24-25 & Ex. B. K-PRO operates websites using the mark "golds" in the URLs. Through these websites, K-PRO offers products such as t-shirts, stickers, and decals bearing marks belonging to Gold's. Albright Cert. Ex. B. Moreover, K-PRO is well aware of Gold's marks; K-PRO previously applied to become an approved vendor of Gold's products (after being threatened with litigation for its unauthorized use of Gold's marks) and recently attended Gold's annual vendor conference without Gold's permission. Albright Cert. ¶¶ 28, 31. It is apparent that K-PRO is intentionally using Gold's marks to create a likelihood of confusion. *See Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*,

130 F.3d 1305, 1308 (8th Cir. 1997) (in determining whether a likelihood of confusion exists, courts consider, among other things, the alleged infringer's intent to pass off its goods as those of the trademark owner). Having reviewed the record, the Court readily concludes that Gold's has established a likelihood of confusion and thus has established that Gold's is likely to succeed on the merits of its trademark-infringement claims.

### C. Irreparable Harm and the Balance of Harms

Gold's has also established a threat of irreparable harm. "Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [the trademark owner] can demonstrate a likelihood of consumer confusion." *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987). Gold's has established a likelihood of consumer confusion, as discussed above.

In *eBay v. MercExchange, L.L.C.*, the Supreme Court disapproved the Federal Circuit's general rule that, in patent cases, a permanent injunction should issue once infringement and validity have been found. 547 U.S. 388, 393-94 (2006). Instead, the Supreme Court held, courts must consider the traditional four-factor test to determine if an injunction is warranted. *Id.* at 394. Some courts have suggested that *eBay* may preclude a presumption of irreparable harm in other intellectual-property cases, including those involving trademark infringement. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227-28 (11th Cir. 2008). In this case, however, the Court will apply the presumption for two reasons: (1) Gold's has a particularly strong case on the merits, and (2) K-PRO has failed to oppose the motion, much less argued that no presumption should apply.

As a general matter, the loss of intangible assets such as reputation and goodwill can constitute irreparable harm. *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003). As the Eighth Circuit recognized in *General Mills*, a trademark by its very nature represents these types of intangible assets. It is therefore reasonable to presume that K-PRO's use of identical marks, and any resulting consumer confusion, create a threat of irreparable harm to Gold's.

Moreover, even if the presumption were inapplicable, Gold's has offered evidence that its marks are widely known and associated exclusively with Gold's-approved vendors and franchisees. Albright Cert. ¶ 19. Gold's has further offered evidence that its marks represent and embody Gold's considerable goodwill and favorable reputation. Albright Cert. ¶ 19. In light of this evidence, which K-PRO has not attempted to rebut, the Court concludes that K-PRO's use of Gold's marks presents a threat of irreparable harm to Gold's. As K-PRO has failed to present any evidence concerning any harm that it may suffer as a result of an injunction, the balance of harms also weighs in favor of injunctive relief.

### D. Public Interest

The public interest is promoted by preventing customer confusion and infringement of trademarks. *See United States v. Washington Mint, LLC*, 115 F. Supp. 2d 1089, 1105 (D. Minn. 2000); *Am. Dairy Queen Corp. v. New Line Prods., Inc.*, 35 F. Supp. 2d 727, 733 (D. Minn. 1998).

All four *Dataphase* factors weigh in favor of granting a preliminary injunction. Gold's motion is therefore granted.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for a preliminary injunction [Docket No. 3] is GRANTED.

2. This order relates to plaintiff's marks set out in the appendix to this order [hereinafter "Gold's Marks"].

3. Defendant, and its partners, agents, servants, employees, parents, subsidiaries, and all persons acting in concert or participation with any of them, are preliminarily enjoined and restrained from using any of Gold's Marks or any mark confusingly similar to Gold's Marks.

4. Defendant, and its partners, agents, servants, employees, parents, subsidiaries, and all persons acting in concert or participation with any of them, are preliminarily enjoined and restrained from taking any action calculated or likely to cause confusion, mistake, or deception among members of the public or members of the trade as to the source, sponsorship, affiliation, or approval of plaintiff's products and services.

5. Defendant, at its own expense, is ordered to recall marketing, promotional, and advertising materials that bear or incorporate any of Gold's Marks or any other mark confusingly similar to Gold's Marks.

6. Defendant must remove from any website or web address in its control anything that bears or incorporates any of Gold's Marks or any other mark confusingly similar to Gold's Marks.

7.  Defendant must file with the Court and serve upon plaintiff, within fourteen days after being served with a copy of this order, a written report, under oath, setting forth in detail the manner in which defendant has complied with this order, the customers it contacted regarding compliance with the order, the last day on which it provided products or services to those customers, and the actions it has taken to cease using the Gold's Marks since the filing of plaintiff's complaint.

Dated: July 28, 2009

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge